May it please the Court, Chief Judge, Your Honors, my name is Philip Gerson and I represent the appellants in this case. Dino Antuna et al., the homeowners of 13 homes that were purchased from American West Homes back in 1999 in Las Vegas, Nevada, the homeowners, when they went in to buy their homes at different times and at different occurrences, were all who were employees of the defendant, of the appellee in this case, and these representations that we set forth in our brief and in the excerpt of the record indicate that they were provided information where an actual road was going to be built south of their subdivision. The subdivision name is called Timberlake. It's also called Deer Springs Unit 3. It was owned by American West Homes from a long time before then. They had built all the homes in that subdivision and, in fact, had lost part of that subdivision to the county when the county dedicated lands for the beltway. We're aware of the facts. Why don't you move directly to the issues? Thank you, Your Honor. The first issue that we raised on appeal is the issue of the arbitrability of this case. My clients signed contracts with American West Homes. All of the contracts had within them an arbitration provision. I understand that, but then something else happened. Your clients brought lawsuits in the other side to considerable period of litigation, discovery, and all the rest, and then all of a sudden popped up, what was it, 15 months later and said, oh, gee, we really want to arbitrate this case. I can't understand why, if you want arbitration, you didn't commence by asking for arbitration. Your Honor, first of all, we commenced our case in state court. What does that have to do with it? That has nothing to do with the arbitration issue. It has to do with the fact that when my clients made the decision So they made a decision to go by litigation. They made the decision to go by litigation because they did not believe the arbitration provision was valid, as they believed it was a contract of adhesion. You bought the program, and you ended up in federal court, where I guess you don't like to be, but now you're telling me you made a conscious decision not to pursue arbitration. This seems to be a 100 percent case of waiver, then. It's not that somebody woke up and realized, oh, gee, we ought to be in arbitration. You just told me you made a decision to forego arbitration and to pursue litigation. No, Your Honor, I did not make a decision, and my clients did not make a decision to forego arbitration. They made a decision to commence some action whereby they could get the attention of the appellees so that they would respond to the claims that are being made in this case. When my clients tried to discuss So the arbitration was a stalking horse, and you didn't, I mean, the litigation was a stalking horse, and you didn't mean it? No, Your Honor. The litigation was never a stalking horse. Well, now you're telling me it was just to get somebody's attention. That's correct, Your Honor. We filed it to get the attention of the appellees, to get them into court. Intending to go to arbitration? Intending to go to arbitration? We could not arbitrate with the individuals. They did not sign the agreement. That was our contention to the court below. The arbitration provision is solely with American West Homes. The fraud claims arise out of the actions of individuals who are not signatories to the contract. They're not parties to the contract. And the arbitration provision specifically states that they're not parties to the arbitration provision. When we filed our claim, we filed it because we believe the majority of the claims were against parties whom we could not arbitrate the case. Did you file against American West? Arbitration? In the first instance when you filed the lawsuit. Right, I did not. American West was not a party? No, American West was a party. I thought you would ask me if we had filed a separate arbitration with American West. We filed, we brought all parties in at the same time, including parties who are no longer here, which would be the loan lenders and other real estate persons who were involved in the original sales of the property to my client. You're aware of the concept of waiver. Yes, I am. Why have you not waived your opportunity to pursue this by way of arbitration? Because there's been no prejudice to the appellees. That's not what they say. You dragged them through litigation for 15 months. We did not drag them through litigation for 15 months, Your Honor. In the 15 months of litigation, what occurred was the appellees filed a motion to dismiss that they lost. They then took the discovery of my clients taking their depositions, which is the same thing they would have done in arbitration pursuant to Nevada arbitration rules. We then took the deposition of the defendants, and that's it. It's the same discovery that would have been conducted in arbitration, the same method of discovery that would have been conducted in arbitration. And I don't have the case cited here, but there was a case by this Court, and I apologize, I can't recall it right now, that said that merely going through litigation and doing what you would have done in court instead of in arbitration when the actions would have been the same is not prejudice. You mean you have a winning case and you don't know what it is? Your Honor, I truthfully, I don't know if it's a winning case. I just remember reading it, but I remember reading the cases that I did cite and all of those that I did cite. What's the case? What's the case? No, Your Honor, I cannot recall it. I really cannot. I really don't. You may have a winning case and you don't know what it is and you failed to prepare to tell us what it is? No, Your Honor, I can't. Counsel. How are we supposed to rely on that? I'm sorry. Go ahead, Judge Rutter. I just wanted to ask you what the district court said with respect to the issue of prejudice. The district court said in its order merely that because litigation had proceeded that there was prejudice to the appellees. In the third page or so of the Court's opinion, right at the top before it discusses summary judgment on the issue of damages, the district court said that it found prejudice because their litigation permits they filed an answer, conducted discovery, and then we filed our motion as discovery closed. Therefore, the court found prejudice. There had been no discovery that it conducted that couldn't have been conducted in arbitration. There was no discovery that was conducted that was outside the scope of the arbitration since everything according to the lower court was arbitrable and therefore should have been included in arbitration. Did you make a motion to reopen discovery? Yes, we did. That was denied. That was correct. And then you asked for arbitration. That's correct. Assuming that you're properly here and assuming that you have, in fact, waived your right to arbitrate, you've got two different categories of plaintiffs. One's the so-called lot premium buyer and one's the, I guess I'll call it regular buyer. Correct. I think the case against your lot premium buyer is stronger because of language in the contract. I think weaker against the, I'll call them the regular buyers. The district court held against you with respect to the regular buyers because in the district court's view, you had failed to produce evidence of actual damage. What evidence is there in the record of actual damage that should allow your client to survive, your regular buyer clients to survive summary judgment? Your Honor, in the actual record, there is the testimony of each individual homeowner as to the improvements they made to their lots based upon the representations that they were made, provided to them, things they would not have built, such as one of the gentlemen testified that he would not have built a $30,000 pool and pool area. That sounds like reliance rather than damages. Do you have evidence in the record that shows that the property is worth less given where the road actually is compared to where the road was represented to be coming? We have no evidence of diminution of value, Your Honor. Why not? Why not? It seems self-evident that would be so. So why can't you get evidence of that? Because, I don't know if the court is aware of this, in Las Vegas after the 1990s and the beginning of 2000 and 2001, property values throughout Las Vegas Valley skyrocketed. They've essentially doubled. There's been no rhyme or reason as to why. It doesn't matter where the home is located or what it's worth. So your damages are aesthetic? No, our damages are out of pocket. They're actual hard damages. These people spent money. I have a homeowner who's got a second floor door leading out to nowhere because they relied upon representations that they were going to have a view and they anticipated building something in anticipation of that view and bought from the appellees. What case law qualifies that as damages? It's contract law. Out-of-pocket expenses are always damages. Case law. Case law. I'm sorry, Your Honor. I do not have one available for you. On the top of my head, I cannot identify a case law because it was not set forth in the issues below. I mean, we cited in our brief the cases that talk about those damages and what they are. Let me ask you this. Just factually, this homeowner with the door that at the moment leads to nowhere, the homeowner under your representation, thought he or she was going to get a view. And the proximity of the road means there's no view? Or it means that there's a lot of noise so you don't want to deck? What's going on? They're looking at a 60-foot earth berm with a concrete retention wall 50 feet from the back of their house. And they expected to get instead? Well, they were told they would have a 300-yard clear space, which no matter what was built at the end of that, they would be able to see the rest of the Las Vegas Valley over that. Right. So I have to say that I don't understand your theory of the case for no damages. Your response to me when I said it's self-evident that if you have a road very close to your house, as distinct from 300 yards away, that there's a diminution in value on account of that. You responded, but they don't have any damages because the prices all over the valley went up. But that doesn't make any sense to me as an answer. It is to say they would have gone up higher in the absence of the road next to the house. Isn't that so? I'm sorry, Your Honor. If you misunderstood me, I did not intend to say that they didn't have damages. What I intended to say was that it was impossible for us to make the determination. Because basically, our appraiser said we don't have enough of a time history given the fact that we had basically two years of these increased market values to figure out what the diminution of value is. In order to do that, you need to sample a large location. This was a unique location. It's the only place in the valley that this has occurred. So he- So let me make it straight then. You are conceding for purposes of summary judgment that you have no evidence of diminution of value because the road is closer to the house? We conceded that in our briefs, Your Honor. Not only in that, we conceded that in the motions that were filed. Oh, goodness. So the damages that you are- say that you are entitled to is the money that you spent thinking that there was going to be a view, so it's the cost of putting in a door and a deck and things like that? If things of that nature, inclusive of the negligent claims, the pain and suffering my clients have incurred for now living next to a freeway when they were promised a 300-yard safe zone. In addition, there's the fraud elements, which are not based on diminution of value. Fraud is a question for the jury. How much were they defrauded? What have they been damaged? We have questions of fact throughout. As was pointed out, with respect to my homeowners, eight of them have identified specific damages based on the view that are set forth in the record and their answers and derogatories in their deposition testimony. Five of them did not. With those eight, there was clearly a different issue, and yet the court below didn't even bother to look at that, just lumped everybody together and said- Well, your response was pretty broad. I mean, when you were called on the carpet to show your evidence of damages, you pretty much just said the record's full of evidence of damages. Parenthetically, go look for it. I did not intend to implicate that, Your Honor. That's the way it reads. I'm sorry. I apologize for that statement. You see- There are specific references- Specific in these kinds of motions, and you weren't. Well, actually, Your Honor, we did, in the briefs, identify every location where every person testified and set forth what their damages were and whether or not they had damages. Yeah, and one person said, well, I really can't point to any damages. All I know is that the houses farther away are selling for more. Right. And that was for the diminution of value issue, as we told the court. Yeah, and I don't see why- I mean, this case, to me, it is so frustrating to me that you just simply throw away what, to me, is your best argument of damages. It is self-evident that a road that's 300 yards away, compared to a road that's right next, there's diminution of value. Now, it may be a little difficult to assess precisely how much it is, but anybody knows that. But you seem to, in your representation, in your argument, have given away, even though you've got testimony from one of your clients who says, listen, the houses that are further away are selling for more. Your Honor, we tried to put that before the court. And we were told that if we didn't have an expert witness, it didn't matter. The court wasn't going to allow us to put that on trial. We need an expert witness to testify about this. It's hard to address this when discovery is closed. And, yes, we have not identified an expert, produced an expert report, to say that the court's going to now allow us to go back and allege, as our clients have alleged, that they've suffered a diminution of value because the homes further away are selling more. And the court says, you can't do without an expert witness. For the purposes of the appeal, it's hard to argue that diminution of value needs to have testimony. And I've got nothing to put forward other than some suggestions. If that's all I need, I'll have the evidence for everything else. How long did you have for discovery? And what notice did you have from the district court that you thought you needed an expert if you were going to get evidence of diminution of value? Total time period. First, total time period for discovery. How much did you have? I believe we had approximately a year. And at what point does the district judge tell you, you need an expert if you're going to put in evidence of diminution of value? At the order denying them, or the order granting the motion for summary judgment after discovery is closed, which is a year after. And what efforts did you make during discovery to obtain an expert, to obtain expert testimony or deposition or some sort of report? We contacted three different appraiser experts. And the last, we had a gentleman named R. Scott Dugan who went out to the project, took photographs, met with some of the homeowners, went in and started running comps to see what he could do. And essentially, when the discovery ran out and we asked the court for more time and was denied, he hadn't been able to finish it because he said he couldn't find comparable homes that he could assess based on the facts that we had in our case. So what did the first three tell you? The first two. Sorry, he's the third. Well, the first two refused to be retained. I wasn't involved in the case back then. I have no idea why they rejected our case. They were asked and they both declined. So you looked, basically, you looked for and were unable to find in a year an expert who would come in and tell you you had some damages. No, Your Honor. We actually did find an expert who was investigating that. He just needed more time to finalize it such that he felt he was able to put out as a written opinion. And we asked the court for more time to do that discovery and we were denied. If there aren't any more questions, would you care to retain four minutes to respond to the other side? Yes, I will. All right. Good morning, Chief Justice, members of the court. Mark Ferrario, appearing on behalf of American West Homes. In light of your comment that you're familiar with the facts, I will address some of the points that you raised in your questioning today. First and foremost, I'd like to address the arbitration issue. The appellants in the court below made the argument to Judge George, and it was the only argument they made, that a federal district court cannot consider waiver when dealing with an arbitration clause. And that's just simply wrong. And I believe that this court knows that. Are you telling us they made no argument that you were not prejudiced? Basically, they just said that the court had to decide a few things. Get rid of basically. When we were in court- What did they say about prejudice or no prejudice? They raised that issue briefly. So they did raise it. We dealt with that with Judge George. But if you look at their briefs, they don't raise it in their briefs. In their briefs, they simply say, and they cite a district court case- Which briefs are you talking about? Briefs in the lower court. But they raised it. No, Judge George raised that in his decision, and I believe he raised it in oral argument. I don't believe it was raised in their brief. But be that as it may, the prejudice here is real, and I'll tell you why. First and foremost, we had to litigate this case for over a year. This case involved some serious allegations of fraud and misconduct and unfair trade practices, which is how we got in federal court. It was a serious case to my clients. We litigated the case, and we couldn't ever get anything back from the other side. If you look at the record, you'll see that we pressed them repeatedly for evidence of damages for an expert. And with all due respect to my opposing counsel, if you look at the record, you will see that what they said to us throughout the course of the case on damages was, we're going to give you an expert. You'll get your expert. And their answer has been a rocket launch. When we sent these out and we followed the rules, we did what we had to do. When we asked, tell us everything that you have on damages. Give us everything. Here's what they say. First, they object to the question. And then they say, an expert has been investigating the diminution and value of our property due to the location of the beltway. That's what we got. We pressed, we pressed, we pressed. We took depositions. We never got any information. We then file motions for summary judgment. And the record is clear on this. They missed time frames. They get up against the wall. They can see the cases are going their way. They've blown discovery deadlines. They have no expert. We've done everything we can do. We've invested money in the case. We filed motions for summary judgment. Then they raise the arbitration issue. It was a manipulative tool. It wasn't because they want to go to arbitration. It was because they could see the writing on the wall. Now, another point I want to bring up on arbitration. If you look at the very first exhibit in the record, and I apologize, this wasn't pointed out in your brief. When they filed this suit in state court, they said that they were filing a complaint for damages and that it was exempted from arbitration pursuant to the Nevada rules that govern arbitration of disputes involving real estate. So the, and then I applaud Mr. Gerson for being candid with this court. They made a conscious decision at the beginning of this process to go to court, not to go to arbitration. Why did you agree? I mean, if you, this was your contract, right, that forced people into arbitration rather than court? Well, I take exception when it's our contract right to force somebody into arbitration. We had an agreement that was mutually agreed to. Either side could have elected to go to arbitration. Who drafted the arbitration provision? We drafted the contract. I'm curious why you didn't take it into arbitration then when they started the lawsuit. Because quite frankly, we thought about it and we were very comfortable with litigating this in the federal forum. We made the conscious decision to stay where we were. Okay, you want to get in the ring, we'll get in the ring with you. Exactly. That's exactly right. You made the choice. We'll stay here and we'll do it the way you want to do it. And we did. Where in the record do they argue that the whole matter is exempt from arbitration? No, if you look at the complaint they filed in state courts, the very first exhibit in the record on appeal, we have a mandatory arbitration program in Nevada and you can elect to go into that or you can elect to be exempted. They elected to be exempted from that arbitration program and they made the conscious decision, as Mr. Gerson said, to invoke the court system and not arbitration. We were comfortable with that. And we played by the rules. And I think it would be a mistake for this court to allow somebody to go to court, litigate a case, get up against the wall because you've missed deadlines, you haven't been able to find an expert, you haven't produced evidence of damage, you've got all sorts of procedural problems and then go, wait a minute, I want to arbitrate. It certainly has chewed up a lot of valuable federal court time, but the other side says everything that's been done is instantly transferable into the arbitration context, so it's not like you've lost ground, it just moves into a different theater. The motions are not instantly transferable. The time that we lost is not instantly transferable. This dispute relates to contracts that were entered into in the late 90s. Okay? Arbitration, one of the values, and I've litigated this issue, and I don't have to preach this to you, one of the values of arbitration is quick, inexpensive, expeditious resolution of disputes. We don't have that now. That benefit has been lost, and it's been lost because of the decision they made, not the decision we made. Let me ask you this, though. Your adversary says that the discovery that was had would have been had in arbitration in any event. Is that right? You know, having arbitrated a number of cases and been in front of a number of arbitrators, you can't say that. Each arbitrator has their own proclivities. We may have gotten no discovery. We may have gotten more discovery. I can't tell you that what we did in the lower courts is of no value. Excuse me. Are you telling me that in Nevada, if you've got arbitration and discovery is appropriate, you're not going to get it? No, you get it in varying degrees, typically, but I can't, what I don't mean to say. Wait a minute. Relax a little bit. This case, if anything, has been under-discovered. So if you're saying you can get varying degrees of discovery, this is not a case where we've just got 10 boxes full of discovery. If anything, discovery's a little light. And you're telling me that if you'd gone to litigation, you're likely to have, if you'd gone to arbitration, you likely would have had less discovery still? With all due respect, Judge Fletcher, I don't think the case was under-discovered. I think we did exactly what we needed to do. And what I would like to tell you is this case- Well, it was under-discovered from their side. Which is why they filed the motion to arbitrate. If it's under-discovered from their side, that's their problem. From my perspective, I did what I had to do. I followed the rules. I asked the right questions and interrogatories. I asked for experts. We took the depositions. We did everything we had to do. I can't tell you that wouldn't be of value in an arbitration proceeding. It would. Counsel? Yes. Excuse me. What have you done, or what do you intend to do with respect to attorney's fees? We made a motion for attorney's fees. And the lower court granted the motion. And we're going to supplement that with the fees that we, if we're successful in appeal, that we incur on appeal. We have an award of attorney's fees that's presently in the form of a judgment from the lower court. What is the amount of that? I believe, if, can I turn to my client, because I think she knows better than I. 67,000 plus interest, I believe. So I can't tell you that the discovery wouldn't be of value. It would. But the point here is, we have a process. The process really was turned on its head by the plaintiffs. We felt all along their claims were frivolous. We pressed this case vigorously. At every step of the way, we were met with resistance. And if you look at the excerpts from the record, and if you look at what's in the record factually, it's information we put in. We gave to the district court everything. The deposition excerpts, interrogatory answers, everything. They put none of that in. We did. We said, take a look at this case. It's a case that should have never been brought. Judge George, after carefully considering the evidence, ruled in our favor. Now, in a last-ditch effort to avoid the inevitable, they came up with the arbitration arguments, which I think is fatally flawed. Let me ask you, assuming that we're properly here, let me go to the damages question. Putting to one side the diminution in value question, you heard the exchange. Why isn't it, in fact, damage, maybe not a lot of damage, but why isn't it damage that if I think there is going to be a road 300 yards away, I start building and designing my house, put a door on the second floor, and do various things in reliance on what I'm expecting, then it turns out the house is, the road is much closer, the house is much closer to the road, and what I've done is now worthless or even counterproductive. Why isn't that damage? Well, I need to address that in pieces. First, in the context of this case, that, again, was an argument they came up with at the end. It was a salvage argument. We sent the interrogatories to them during the course of the case, and we said, tell us about your damages. What we got back were answers like the one that I just quoted to you. We have done a lot, we've hired an expert, and we're going to give you information on diminution of value. That's what we got. That's how we conducted our case. But that's not the question I asked you. Right. Then we end up taking their depositions, and these folks come in and said, well, I would, I had, I put a door in. Would you have done it? Well, we might have, but we may not have. When you say, I mean, all of a sudden you're quoting a deposition. Do you have that deposition language? I mean, depending on how these things are said, it may make a difference. So do you want me to put my nose in the language you're paraphrasing? Actually, I don't have that tab. But if you look at the deposition language, it's consistent throughout. Nobody gave us any receipts. Nobody gave us any documents showing what they had spent. Nobody showed us that that, and this gets back to diminution of value because the premise of your question was these improvements may have been worthless. Somebody said they put a pool in their backyard, and they wouldn't have done that but for this fact they thought they had a view. Did the pool add to the value of the house? Did it decrease in the value of the house? That's why diminution of value is the real measure of amity. You know, I don't think you're answering my question. I'm not asking about diminution of value. I'm asking about changes made to the house, whether it's a pool, whether it's a door opening out of nowhere on the second floor, or something else. Things that are built in the house that would not have been built that way had the homeowner known that the road was going to be next to the house instead of 300 yards away. Assume that that is the fact for the purpose of my question. Why is that not damage? I think it would be appropriate measure of damages under the out-of-pocket damage theory. Okay. So the only question is whether there's sufficient evidence that this is so. And whether it was pled, and whether they properly presented it, which gets back to whether there's sufficient evidence for that. I would agree with you that if it was properly pled, and they provided the appropriate answers to interrogatories, and the sufficient backup evidence, then you could conceivably have, if you could get a fraud claim to the finish line, a measure of out-of-pocket damages. And why is it not sufficient evidence of this? I'm putting to one side pleading. I'm just asking evidence. Why is it not sufficient evidence of this at summary judgment stage if a homeowner testifies, puts it in a deposition, I would not have put in that tool had I known. I would not have put that door on the second floor leading to nowhere had I known. Why is that not sufficient evidence of the point? Well, I think then now we get back to whether the way I would approach that is if you said I wouldn't have put the pool in, but the pool added $50,000 in value to your house, and it cost you $30,000, then you really haven't been damaged. Let me ask about the door then. I would have an answer to that, but the easier one is the door on the second floor leading to nowhere. If the homeowner says I put in this door opening out from the second floor, I intended to put in a deck, I'm now not going to put in a deck given that the road is right there, what's my deck going to be for, I would not have done that had I known, why is that not sufficient evidence of that damage? I think, again, my answer would probably be the same. You would have to look at it. Did it enhance the value of the home? No, you just conceded that we're not talking about enhancing the value of the house. If that is so, that is damages, and I'm saying if the homeowner says that it's so, why is that not sufficient evidence of the fact? Because I think the underlying premise of my answer is if that improvement is now worthless, then yes, it's out-of-pocket damages. If it's enhanced the value of the house, then you're okay. If a door on the second floor leading to nowhere has enhanced the value of the house, then you're okay? And that's misleading. What you have is you have a door that goes out on a deck. If you're looking south, you may not be able to see anything but the berm, but if you look to the right, you have the mountains. If you look to the left, you have the mountains. One part of your view has been deprived, and many people put decks on for many reasons. Well, you've given us the case of Randano v. Turk. Yes. That's a leading case on damages in Nevada. Yes. It says the measure of damage is for fraudulent misrepresentation. Let's assume we've got that in this case for the sake of argument only. It can be determined in one of two ways. The first allows the defrauded party, that would be the person who bought the home, to recover the benefit of his bargain. That is the value of what he would have if the representations were true, less what he had received. Wouldn't that permit somebody to say the benefit of my bargain was a house with a 360-degree view, which would have been worth X. I didn't get it, and so therefore the benefit of my bargain has been lost, and that's the measure of my damage. I would agree with you that if they could prove a fraud claim, if they could get by all of the other issues, and that would get back to what you elicited from him on the questioning, you would have an appraiser come out and say that the house today is worth X. Had it had the view, it would be X plus. That would be, in fact, the measure of damage. And that's what's missing. Yeah, it's not there. It's simply not there. I would agree with you on that characterization of damages. And also in Nevada, you also have the out-of-pocket damage. That's the other hook, right? Which is where you were going. That's right. And he's saying I've got out-of-pockets that I wouldn't have spent. I understand that, but I think the analysis is just a little bit more complex than just... I must say that amount of damages in relation to what the expectation damages, I think probably were and were provable, but they don't seem to have done a very good job of it. The out-of-pockets are relatively small. I don't think the case would have been brought for out-of-pocket damages to be perfectly blunt. This, again, it was a salvage tactic at the end of the case when they had set the case up. You know, when you're on the defense, you employ the procedural tools to find out what the case is about. We did that. We were told we're going to get an expert. Up to the, you know, end of discovery, that expert never came. And when we took the depositions of the individual plaintiffs, we asked them questions about this. And I'm not going to bore you with all that testimony. It's in the record. We asked them questions, and inevitably what we got was, well, you know, we did put in some improvements, but, you know, I really don't know. It might have cost me $30,000. We've got an expert coming. They said that. So we waited for the expert. The expert never came. Discovery closed. We made our motions. Judge George did the right thing. Judge George considered the record. He carefully reviewed all of the evidence. He looked at the contracts. He looked at how this case evolved. And he made the right call on arbitration, and he made the right call on damages. And this Court should uphold that ruling. Thank you, counsel. The other side may respond. Thank you, Your Honor. I would like just quickly to address the issue of the waiver of arbitration that was alleged when we filed our complaint. I don't know if this Court is aware. Most states have a court-annexed arbitration program. This is to get rid of cases under a certain dollar value. That's what you were talking about. That's what we have to do. If we have a real estate case, you have to move it. Otherwise, our damages would have been limited $40,000 for all of my clients. So you have to move to exempt it from that arbitration program. That's what we did. We did not request exemption from our waiver. The other side says, among other things, well, what we were prejudiced is we lost what you get in arbitration, which is a quick resolution to the case. That's now history. That's prejudice. I'm sorry. You said the arbitration program we're talking about is still at least nine months to a year. I'm talking about, he says, look, if this thing would have started out early as arbitration, we would have gotten what we were looking for. It was a quick resolution of the issue. Instead, you waited a year and a half. You dragged us through the courts. We lost that benefit. And that's what the prejudice is to us. I understand what he's saying, Your Honor. Why is that wrong? Well, I think that if we look at the cases that have been cited in here, Chiron and the others, when we're talking about prejudice, we're talking about serious and substantial waiver issues. You're talking about people signing written waiver agreements, talking about people who fully litigated a case all the way through trial and verdict, which is, I believe, it includes Hoffman. They were cited on top of waiver. In order to get waiver in the cases that have been before the court, you need to have gone through every single step, including possibly even have already arbitrated one, if not three or four times, including having a full and final decision on the merits on your case. We don't even have that here. As for the timing of the filing, the motion for summary judgment on liability was filed while we were taking depositions. That was my answer that was due. My answer was due in the middle of discovery. And, you know, the court did note that it was late, but took my response into consideration anyway. This is not something that they waited until we were done with discovery to file. They filed their motion to the Smith immediately after they had removed it to federal court. And then they filed their motion for summary judgment in the middle of discovery. So when they're saying we've been prejudiced because we had to conduct all these things, they had already made the decision to file their motion when they remanded. That's why they moved to dismiss, because they didn't feel that they would have to fight this battle. When they lost that, they filed it again during the middle of discovery before we ever took any of these depositions. And now they're trying to say they've been prejudiced because they had to take the depositions when they had their motion filed before that ever came up. We did not blow any discovery deadlines. We might not have gotten an expert, but we didn't blow the deadlines. The deadlines came. The deadlines passed. We had our discovery. We took our depositions. We took what we felt we needed to have for the case. And we filed our motions before the motions deadline, like the court required. We did not have a trial date set in this case. This matter was not set for trial. And there was no prejudice, we believe, to the appellees, particularly in light of the fact that, as has been pointed out by the court, we have persons in this case who were not subject to the you didn't make any representations provision. I mean, I don't know what else to call it, of those who had a lot premium versus those who didn't. They were lumped together by the lower court, and we believe that that was wrong. At the very least, the lower court has to go back and readdress his decision, because it does not provide explanation or anything as to why all of my clients are put in the same boat and assess the same penalty, particularly in light of the fact that some of them aren't in the same situation. There are differing damages. People have put forward different evidence. And on that basis, there is clearly at least a question of fact as to whether there was enough evidence for out-of-pocket expenses to go forward to trial. There was enough evidence. If your only damages now amount to improvements, what's the total amount that this case is worth all of a sudden? Well, starting with the $30,000 for the pool, and I apologize, Your Honor, my time is up. If you'd like me to finish. Well, you can answer my question. I won't cut you off. Thank you, Your Honor. From everything that I've read of my clients and all the documents I've seen, it's probably somewhere in the neighborhood of $70,000, $75,000. Thank you, counsel. Your time is up. The case just argued is ordered submitted. We appreciate your help.
judges: Schroeder, Trott, W. Fletcher